UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Eastern Division)

```
_____
                                   )
In Re:                             )
                                   )    Chapter 11
INPRINT MANAGEMENT, INC.           )    Case No. 18-11931-JNF
d/b/a Proforma InMotion            )
              Debtor.              )
_____)
```

## DEBTOR'S PLAN OF REORGANIZATION DATED MARCH 19, 2019

Pursuant to Section 1121(c)(3) and 1123 of the United States Bankruptcy Code, 11 U.S.C. Section 101 et sea., InPrint Management, Inc. d/b/a Proforma InMotion, proposes the following Plan of Reorganization Dated March 19, 2019.

## ARTICLE I
## DEFINITIONS

For the purposes of this Plan, the following terms shall have the meanings hereinafter set forth:

1. **Administrative Claims**: shall mean claims for the costs and expenses of administration of this Chapter 11proceeding as, when and to the extent allowed by the Bankruptcy Court included within Section 503(b) of the Code which are entitled to first priority as provided under Section 507(a)(1) of the Code, including without limitation the actual and necessary costs and expenses of preserving the Debtor's estate and of operating its business, and all allowances, compensation expenses for attorneys and other professional persons awarded pursuant to Section 330 of the Code or as otherwise allowed by the Bankruptcy Court.

2. **Allowed Claim or Allowed Interest**: shall mean a claim against or equity security interest in the Debtor to the extent that: (a) a proof of such claim or interest was (i) timely filed on or before the deadline set by the Bankruptcy Court by Order by which proofs of claim or interests must have been filed, (ii) deemed filed pursuant to Section1111(a) of the Bankruptcy Code, (iii) not filed, by reason of the fact that the filing of a proof of claim or interest for such claim or interest was not required by the said Order of (iv) filed late with

leave of the Bankruptcy Court after notice and opportunity for hearing given to counsel for Debtors; and (b) that such claim (i) is not a Disputed Claim, or (ii) is allowed (and only to the extent allowed) by a Final Order.

3. **Allowed Priority Claims**: shall mean all claims entitled to priority under Sections 507(a)(3)-(6) of the Code; and: a) as to which a proof of claim is timely filed under Section 502(a) of the Code; and b) as to which no timely objection is filed, or if an objection is so filed, as determined by a Final Order of the Court.

4. **Allowed Priority Tax Claims**: shall mean all claims entitled to priority under Section 507(a)(7) of the Code and: a) as to which a proof of claim is timely filed under Section 502(a) of the Code; and b) as to which no timely objection is filed, or if an objection is so filed, as determined by a Final Order of the Court.

5. **Allowed Secured Claim**: shall mean that portion of an allowed claim secured by a valid lien equal to the value of the interest of the holder thereof and property of the Debtor securing such allowed claim as agreed upon between the holder thereof and the Debtor or, in the event of a dispute, as determined by the Bankruptcy Court pursuant Section 506(a)(1) of the Bankruptcy Code.

6. **Allowed Unsecured Claim**: shall mean an Allowed Claim of any kind or nature, other than an Administrative Claim, Priority Tax Claim, Federal Tax Claim, Secured Claim, or State Tax Claim, including without limitation a Deficiency Claim or Undersecured Claim, exclusive of the Allowed Unsecured Claim of Michael Flynn.

7. **Allowed Unsecured Claim of Michael Flynn:** shall mean an Allowed Claim of any kind or nature of Michael Flynn.

8. **Chapter 11 Case**: shall mean the Debtor's Chapter 11 Case No. 18-11931-JNF which was commenced by filing of the voluntary petition under Chapter 11 on May 24, 2018.

9. **Claim**: shall mean any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

10. **Code or Bankruptcy Code**: shall mean the United States Bankruptcy Code, 11 U.S.C. Section 101 et seq., and any amendments thereto.

11. **Confirmation Order**: shall mean an Order entered by the Court confirming the Plan pursuant to Section 1129 of the Code.

12. **Consummation of the Plan**: shall mean the accomplishments of all things provide for in this Plan.

13. **Court**: shall mean the United States Bankruptcy Court for the District of Massachusetts, in which the Debtor's Chapter 11 case is pending.

14. **Creditor**: shall mean the person or entity that has an Allowed Claim against the Debtors.

15. **Debtor**: shall mean InPrint Management, Inc., d/b/a Proforma InMotion.

16. **Deficiency Claim**: shall mean the balance of a Claim after sale or disposition (voluntary or involuntary) of any collateral securing such Claim (including foreclosure or delivery of a deed in lieu of foreclosure of such collateral) to the extent the Debtor is personally liable for such Claim, whether by personal guarantee or otherwise.

17. **Disputed Claim or Interest**: shall mean alleged claims against the Debtor as to which an objection has been filed on or before the Effective Date and which objection is not the subject of a Final Order and has not been withdrawn on or before the Effective Date.

18. **Disbursing Agent**: shall mean the Debtor's court appointed attorneys, Riley & Dever P.C., 210 Broadway, Suite 101, Lynnfield, MA 01940.

19. **Effective Date**: shall mean 30 days after which the confirmation order shall become a final order no longer subject to appeal or certiorari proceeding, and as to which no appeal or certiorari proceeding is then pending.

20. **Estate**: shall mean all legal or equitable interest of the Debtor in property as to the commencement of the Chapter 11 Case, together with such other rights and interests as are described in Section 541 of the Code.

21. **Petition Date**: shall mean May 24, 2018, the date on which InPrint Management, Inc. filed its Chapter 11 petition with the Court.

22. **Plan**: shall mean the Plan of Reorganization under Chapter 11 filed by the Debtor, as modified or amended in accordance with the terms hereof and the Code.

23. **Plan Fund**: shall mean all cash to be used to make payment to the Allowed Unsecured Claims hereunder.

24. **Secured Creditor**: shall mean the owner and holder of an allowed secured claim.
25. **Undersecured Claim:** shall mean an Unsecured Claim resulting from the determination pursuant to 11 U.S.C. §506(d) and Federal Bankruptcy Rule 3012 that the claimant holds wholly unsecured claim, based on the value of the collateral.
26. **Unsecured Creditor**: shall mean the holder and owner of an Allowed Unsecured Claim, including an Undersecured Claim.

## ARTICLE II
### TREATMENT OF UNCLASSIFIED ADMINISTRATIVE EXPENSES AND CERTAIN OTHER PRIORITY CLAIMS

**2.01  Claims Other Than Taxes**: The holders of all Administrative Claims entitled to priority under Section 507(a)(1) of the Code, including allowed professional fees and expenses shall receive on account of such claims cash in the amount of such claims (i) on or within 30 days following the Effective Date or upon entry by the Court of an Order allowing such claim, whichever shall be later, or (ii) at such other times and in such amounts as the holders of such claims may agree.

**2.02  Tax Claims**: The Allowed Priority Tax Claims, including all nondischargeable interest pursuant to 11 U.S.C. §1141(d)(2), will be paid in full in equal monthly installments of principal and interest over a period not later than 5 years after the date of the order for relief entered in this case, in accordance with Bankruptcy Code Section 1129(a)(9)(C), with post confirmation interest at the applicable federal statutory rate in accordance with Section 6621 of the Internal Revenue Code.

## ARTICLE III
### DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

All Allowed Claims and Allowed Interests are placed in the following classes.  A proof of claim or interest which asserts a claim or interest which is properly included in more than one class is in a class to the extent it qualifies within the description of such class and in a different class to the extent it qualifies within such different class.

**3.01 Class One:** shall consist of all Allowed Priority Claims entitled to priority pursuant to 11 U.S.C. Section 507(a)(3)-(6).

**3.02  Class Two**: shall consist of all Allowed Secured Claims of PFG Venture, LP.

 **3.03** **Class Three**: shall consist of all Allowed Secured Claims of Federated Law Group d/b/a On Deck Capital.

 **3.04** **Class Four**: shall consist of all Allowed Secured Claims of Santander Bank, NA

 **3.05** **Class Five:** shall consist of the Allowed Secured Claim of Thomas and Mali Alwood

 **3.06** **Class Six:** shall consist of the Allowed Unsecured Claim of Michael Flynn

 **3.07** **Class Seven**: shall consist of all Allowed Claims other than Class One, Two, Three, Four, Five, Six, and Seven Allowed Claims.

 **3.08** **Class Eight:** shall consist of the Allowed Interest in the Debtor

## ARTICLE IV
## PROVISION FOR TREATMENT OF CERTAIN PRIORITY CLAIMS

 **4.01** Administrative Expenses as defined and allowed under Section 503(b) of the Code, entitled to first priority under Section 507(a)(1), including amounts awarded under Section 330, shall be paid in full on the Effective Date, or when finally allowed, whichever may be later, or shall be paid in accordance with such other arrangements as may be made between the holder of such a claim and the Confirmed Debtor.

 **4.02** All other administrative claims and expenses, shall be paid by the Confirmed Debtor on or within 30 days following the Effective Date.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS

 **5.01** **Class One (Allowed Priority Claims):** This class consists of all Allowed Priority Claims, other than Priority Tax Claims. Each holder of a Class One Allowed Claim shall be paid in full satisfaction thereof 100% of its Allowed Claim payable on the Effective Date, or upon allowance of its claim, whichever is later. This class is unimpaired under the Plan and each member is not entitled to vote to accept or reject the Plan.

 **5.02** **Class Two: PFG Ventures, LP:** This class consists of the Allowed Secured Claim of PFG Ventures, LP d/b/a Proforma ("PFG") against the Debtor. PFG holds a first priority security interest on all personal property assets of the Debtor pursuant to a Franchise Agreement dated February 20, 2013 and a Receivables and Security Agreement dated February 20, 2013, (the "PFG Agreement"). The total amount owed to PFG as of the Petition Date was approximately $78,142.80.

The Allowed Secured Claim of PFG shall be fully settled and satisfied by the payment of the entire outstanding balance due and owing to PFG as of the Effective Date as hereinafter modified as follows: the entire outstanding balance due and owing as of the Effective Date to PFG shall be amortized and paid over 60 months in equal monthly installments of principal and interest in arrears at 5%.

PFG shall retain its first priority security interest in all personal property assets of the Debtor until such time as its Allowed Secured Claim has been paid in full. In all other respects, the terms of the PFG Agreement shall remain unaffected and in full force.

This claim is impaired under the Plan and the claimant is entitled to vote to accept or reject the Plan.

**5.03** **Class Three: Federated Law Group d/b/a/ On Deck Capital:** This class consists of the Allowed Secured Claim of Federated Law Group d/b/a On Deck Capital ("Federated") against the Debtor. Federated holds a second priority security interest on all personal property assets of the Debtor pursuant to a Business Loan and Security Agreement dated March 28, 2016 and related documents (collectively "Federated Agreement"). The total amount owed to Federated as of the Petition Date is approximately $11,138.42.

The Allowed Secured Claim of Federated shall be fully settled and satisfied by the payment of the entire outstanding balance due and owing to Federated as of the Effective Date as hereinafter modified as follows: the entire outstanding balance due and owing as of the Effective Date to Federated shall be amortized and paid over 60 months in equal monthly installments of principal and interest in arrears at 5%.

Federated shall retain its second priority security interest on the personal property assets of the Debtor until such time as its Allowed Secured Claim has been paid in full. In all other respects, the terms of the Federated Agreement shall remain unaffected and in full force.

This claim is impaired under the Plan and the claimant is entitled to vote to accept or reject the Plan.

**5.04** **Class Four: Secured Claim Santander Bank, NA**: This class consists of the Allowed Secured Claim of Santander Bank, NA ("Santander") against the Debtor. Santander holds a first lien on the Debtors' motor vehicle, a 2013 Infinity M374 (the "Vehicle"). The total amount owed to Santander as of the Petition Date is $26,082.36.

Santander has filed a Proof of Claim reducing its secured claim to $18,475 based on the fair market value of the Vehicle. Pursuant to the Santander Proof of Claim as well as 11 U.S.C. §506(a)

and Federal Bankruptcy Rule 3012, the Allowed Secured Claim of Santander shall be reduced to and determined at $18,475.

The Allowed Secured Claim of Santander shall be fully settled and satisfied by the payment of the entire outstanding balance due and owing to BOA as of the Effective Date as hereinafter modified as follows:  The entire outstanding balance due and owing as of the Effective Date shall be reduced to $18,475 and paid in equal monthly installments of principal and interest, in arrears, with interest at 4.0% per annum, amortized and paid over a period of thirty-six (36) months following the Effective Date.  In all other respects, the loan agreements between the Debtor and Santander shall remain unchanged.  Santander shall retain its lien on the Vehicle until such time as its Allowed Secured Claim has been paid in full.  Any Undersecured Claim of Santander, estimated at $7,607.36, shall be treated as a Class Seven General Unsecured Claim.

This claim is impaired under the Plan and the claimant is entitled to vote to accept or reject the Plan.

**5.05** **Class Five: Secured Claim of Thomas and Mali Alwood:** This class consists of the Allowed Secured Claim of Thomas and Mali Alwood (the "Alwoods") against the Debtor.  The Alwoods holds a third priority security interest on the accounts of the Debtor held by PFG by virtue of a Judgment obtained from the United States District Court for the Central District of California dated November 3, 2015, and a Reach and Apply Preliminary Injunction issued by the Essex Superior Court, on April 18, 2018 in Civil Action No. 1877CV00409 (the "Alwood Civil Action"), precluding any future payments by PFG to the Debtor (or its principal Kevin Montecalvo) and precluding the Debtor (and Montecalvo) from receiving any such future payments, absent a further order from the Superior Court (the "Reach and Apply Injunction").  The total amount owed to the Alwoods as of the Petition Date is $150,351.78.

The Allowed Secured Claim of the Alwoods shall be fully settled and satisfied, pursuant to a negotiated settlement between the parties, by the payment of the entire outstanding balance due and owing to the Alwoods as of the Effective Date <u>as hereinafter modified</u>.

The entire outstanding balance due and owing as of the Effective Date to the Alwoods shall be reduced and determined to be $108,000 and amortized and paid over sixty (60) months in equal monthly installments of principal with no interest commencing thirty (30) days following the Effective Date and continuing on the first day of the month thereafter.   In the event the Debtor fails to make any required monthly payment required hereunder, after the expiration of fourteen (14) days following receipt by the Debtor of written notice of a default and right to cure, sent by certified mail, return receipt requested addressed to the Debtor at its corporate address at 18 Graf Road, Unit 25, Newburyport, MA or any other address which the Debtor shall provide in writing to Alwoods' counsel

7

prior to the due date, the balance owed to the Alwoods shall increase to $175,000 and shall become immediately due and payable, together with all costs and attorneys fees incurred in collection. All monthly payments shall be sent to the Alwoods counsel, attorney Jay Skerry, Esq., Law Office of Joseph H. Skerry, III, 304 Cambridge Road Suite 520, Woburn, MA 01801, or at such other address as the Alwoods shall designate in writing to the Debtor.

The Debtor's president, Kevin Montecalvo, shall personally guaranty all payments to be made by the Debtor to the Alwoods under the Plan. Upon the Effective Date of the Plan, the parties to the Alwood Civil Action shall execute and file with the Essex Superior Court in the Alwood Civil Action an Agreement for Judgment with the Debtor and the nonDebtor defendants named in the Alwood Civil Action which shall contain payment terms identical to the terms set forth in the Plan. As long as the Debtor is in compliance with the terms of the Plan, the Alwoods will take no further collection or enforcement action against the Debtor and the nonDebtor defendants in the Alwood Civil Action. The Debtor agrees to execute any and all documents to secure the payments to be made hereunder, including UCC-1 finance statements to be filed with the Massachusetts Secretary of State. Upon the payment in full of the Alwood Allowed Secured Claim as provided in the Plan, the parties to the Alwood Civil Action shall execute and deliver mutual general releases, releasing them from any and all claims against each other.

This claim is impaired under the Plan and the claimant is entitled to vote to accept or reject the Plan.

**5.06** **Class Six: Unsecured Claim of Michael Flynn:** This class consists of the Allowed Unsecured Claim of Michael Flynn ("Flynn") against the Debtor. Flynn has asserted a general unsecured claim against the Debtor in the amount of $154,000 (the "Flynn Claim"). In February 2018, Flynn commenced a civil action against the Debtor and certain related non Debtor defendants in the Essex County Superior Court, Civil Action No. 1877-CV-00266D (the "Flynn Civil Action") alleging that the Debtor and non-Debtor defendants acted fraudulently and tortiously, and in violation of state securities laws in connection with the purchase by Flynn of a minority shareholder interest in the Debtor. The Debtor has disputed the Flynn Claim in its bankruptcy schedules. The total amount owed to Flynn as of the Petition Date is $154,000.

Pursuant to a negotiated settlement between the parties, the Allowed Unsecured Claim shall be reduced and determined to be $86,000 as of the Effective Date of the Plan. Within thirty (30) days following the Effective Date of the Plan, the Debtor shall make a payment of $11,000 to Flynn. The remaining amount of $75,000 shall be amortized and paid over 59 months in equal monthly installments of principal with no interest commencing sixty (60) days following the Effective Date of the Plan.

Payments shall be made directly to Flynn in honored funds, with payments mailed to Flynn at such written address as Flynn may from time to time direct.

The Debtor's president, Kevin Montecalvo, shall personally guaranty all payments due from the Debtor to Flynn under the Plan. Within 30 days after the Effective Date of the Plan, the Parties to the Flynn Civil Action (including the Debtor) shall execute and file with the Essex Superior Court in the Flynn Civil Action a Stipulation of Dismissal to fully and finally end the Flynn Civil Action with prejudice and without cost, except that such dismissal shall not affect any payment obligations under the Plan. Also within 30 days after the Effective Date of the Plan, the parties to the Flynn Civil Action shall execute and deliver mutual general releases, releasing them from any and all claims against each other, which releases shall not affect, and shall expressly exempt, any payment obligations under the Plan and any related guaranties.

This claim is impaired under the Plan and the claimant is entitled to vote to accept or reject the Plan.

**5.07** **Class Seven: General Unsecured Claims:** This class consists of all Allowed Unsecured Claims other than Class One, Two, Three, Four, Five, and Six claims.

Each holder of a Class Seven Allowed Unsecured Claim shall be paid in full satisfaction thereof a pro rata share of $105,000 from the Plan Fund established and funded by the Debtor in three (3) dividend distributions. The first dividend distribution will be in the amount of $35,000 and will be made on or within thirty (30) days following the Effective Date of confirmation of the Plan from the Plan Fund in a pro rata amount to holders of Allowed General Unsecured Claims. The second dividend distribution will be in the amount of $35,000 and be made on the first anniversary following the Effective Date of the Plan. The third dividend distribution will be in the amount of $35,000 and be made on the second anniversary following the Effective Date of the Plan. The total distributions to holders of Allowed General Unsecured Claims will represent an estimated 100% dividend on their Allowed Claim, depending on the ultimate amount of Allowed General Unsecured Claims after objections, if any, are filed and a final determination made, with an estimated 33.3% being made on the Effective Date, another estimated 33.3% being made on the first anniversary of the Effective Date of the Plan, and a third and final estimated 33.3% being made on the second anniversary of the Effective Date of the Plan.

The Debtor will hold from distribution to Class Seven Unsecured Creditors and set aside an amount equal to the distributions that would be required to be made to the Unsecured Creditors holding Disputed Claims in the event that such claims later become Allowed Claims (the "Disputed Claim Reserve"). Upon resolution of the Disputed Claims and distributions to holders of such claims which

become Allowed Claims, if any, the Debtor will disburse the balance of the Disputed Claim Reserve to Unsecured Creditors pro rata.

The Debtor estimates approximately $105,000 in Class Seven general unsecured claims.

There exists no known insider claims. There exist no claims for the rejection of any leases or executory contracts.

This class is impaired under the Plan and each member is entitled to vote to accept or reject the Plan.

**5.08   Class Eight (Allowed Interests):** This class consists of all allowed interests in the Debtor. Currently, Kevin Montecalvo holds 90%, and Michael Flynn holds 10% of the outstanding shares of stock in the Debtor. Upon confirmation of the Plan, all outstanding stock in the Debtor will be canceled and a new class of equity interests in the Confirmed Debtor shall be created hereunder, and thereafter such new class of interests shall become the only class of interests in the Confirmed Debtor. Such new class shall consist 100% to Kevin Montecalvo in consideration for his equity cash infusion which is being used to fund payments to be made to creditors under the Plan. The new stock in the Confirmed Debtor shall be issued on the Effective Date of confirmation.    This class is not impaired under the Plan and each member is not entitled to vote to accept or reject the Plan.

## ARTICLE VI
## MEANS FOR EFFECTUATING PLAN, DISCHARGE AND REVESTING OF PROPERTY OF THE ESTATE

**6.01**  The Debtor's obligations under the Plan will be funded out of an equity cash infusion of $10,000 from Kevin Montecalvo, the President of the Debtor, as well as from $66,000 in accumulated cash to be generated by the Debtor.

**6.02**  Except as otherwise provided in the Plan or in the Confirmation Order, after the completion of all payments to be made by the Debtor under the Plan to holders of Class Seven Allowed Claims, and all priority claims, the Court shall enter a discharge effective as of said date, of any and all debts of the Debtor that arose at any time before the entry of the Confirmation Order, including, without limitation, the claims of each member of every class of creditors set forth in the Plan and including all principal and interest, whether accrued before or after the Petition Date, pursuant to Section 1141(a) of the Bankruptcy Code, and all claims by insiders and affiliates of the Debtor. Discharge shall be effective as to each claim, regardless of whether a proof of claim thereof was filed, whether the claim is an Allowed Claim, or whether the holder thereof votes to accept the

Plan. Once the Debtor has fully consummated the Plan, as defined by 11 U.S.C. ¶1101(2), the Debtor shall file an Application for Final Decree seeking to close this case.

**6.03** Except as provided in the Plan, upon confirmation of the Plan, all the property of the Estate of the Debtor shall vest in the Confirmed Debtor free and clear of all claims, liens or interests in the Debtor, to the extent provided in the Plan. All other claims, liens or interests of record with respect to the property of the Estate shall be discharged on the date of such entry of discharge by the Court.

**6.04** The Debtor will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After confirmation, the Debtor (or Disbursing Agent) will serve the United States Trustee with a monthly financial report for each month (or portion thereof) the case remains open. The monthly financial report shall include the following:

(1) a statement of all disbursements made during the course of the month, whether or not pursuant to the plan;

(2) a summary, by class, of amounts distributed or property transferred to each recipient under the plan, and an explanation of the failure to make any distributions or transfers of property under the plan;

(3) Debtors' projections as to the Debtor's continuing ability to comply with the terms of the plan;

(4) a description of any other factors which may materially affect the Debtors' ability to consummate the plan; and

(5) an estimated date when an application for final decree will be filed with the court (in the case of the final monthly report, the date the decree was filed).

## ARTICLE VII
## RETENTION, ENFORCEMENT, AND WAIVER OF CLAIMS

Pursuant to Section 1123(b)(3) of the Code, the Debtors shall retain any may enforce any and all claims except claims waived, relinquished or released in accordance with the Plan.

## ARTICLE VIII
## EXECUTORY CONTRACTS

All leases and executory contracts of the Debtor shall be rejected pursuant to the provisions of Section 365 and Section 1123 of the Code, except any and all leases and executory contracts which are the subject of separate motions filed pursuant to the provisions of Section 365 of the Code by the Debtor prior to the commencement of the hearing on confirmation of the Plan.

# ARTICLE IX
# DISPUTED CLAIMS

**9.01**  No payments shall be made with respect to a Disputed Claim until that Claim becomes an Allowed Claim, by agreement of the or parties or by Final Order of the Court.  Unless otherwise provided in the Plan, the Debtor shall pay the holder of such Allowed Claim the amount provided in the Plan as soon as practicable after the Allowed Claim is established.

**9.02**  Objections to Claims shall be filed by the Debtor with the Court and served upon each holder of a claim to which an objection is made not later than 45 days subsequent to the Effective Date or within such other time period as may be fixed by the Court.

**9.03**  Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claims, without notice to any party in interest except the party whose claim is the subject of the objection.

**9.04**  The Debtor will withhold from its payment to Unsecured Creditors and set aside an amount equal to the aggregate distributions that would be required to be made under the Plan to holders of Disputed Claims in the event that such claims became Allowed Claims.

# ARTICLE X
# RETENTION OF JURISDICTION

Notwithstanding confirmation of this Plan or the Effective Date having occurred, the Court shall retain jurisdiction for the following purposes:

   A.  To hear and determine objections to claims;

   B.  To hear and determine adversary proceedings involving preference actions and actions to recover post-petition payments pursuant to 11 U.S.C. Sections 547 and 549, and to determine the validity and extent of liens pursuant to 11 U.S.C. Sections 545 and 506.

   C.  To hear and determine all applications for professional fees and expenses pursuant to 11 U.S.C. Section 503.

   D.  To hear and determine any dispute arising under the Plan, its implementation and execution of any necessary documents thereunder, and any requests to amend, modify, or correct the Plan.

   E.  To grant extensions of any deadlines set forth in the confirming order as may be appropriate; and

   F.  To enforce all discharge provisions under the Plan;

   G.  To enter a Final Decree closing this Chapter 11 case

## ARTICLE XI
## CONFIRMATION UNDER SECTION 1129(b)

In the event any class is deemed impaired under this Plan and refuses to accept the terms of this Plan, the Debtor request that the Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

## ARTICLE XII
## MODIFICATION OF THE PLAN

The Debtor may amend or modify this Plan at any time prior to the confirmation Date upon notice to those creditors whose interests may be adversely affected by said amendment or modification and with the approval of the Court. The Plan may be modified, subsequent to the Confirmation Date, upon notice and a hearing, in accordance with the provisions of the Bankruptcy Code.

## ARTICLE XIII
## MISCELLANEOUS

Neither the filing of this Plan, nor any statement or provision contained herein, nor the taking by any creditor or the Debtor of any action with respect to this Plan, shall (a) be or be deemed an admission against interest and (b) until the Effective Date, be or be deemed a waiver of any rights which either the Debtor or any creditor might have against the other or any property of the other, all such rights being specifically reserved. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action proceeding or controversy within or outside of the Debtor's reorganization case.

## ARTICLE XIV
## GENERAL PROVISIONS

**14.1** Notwithstanding Section 1141 of the Code, prior to the Effective Date, the Debtor shall continue to operate as a Debtor-in-possession, and all assets of the Debtor shall remain property of the Estate. On the Effective Date of confirmation, all assets of the Confirmed Debtor shall vest in the Debtor free and clear of all liens, interests, and encumbrances of any kind except those specifically retained or created hereunder.

**14.2** After confirmation, and until the case is closed, the Court shall retain jurisdiction to allow or disallow claims, for such purposes as are contemplated under the Code, and to enter such

orders as may be necessary or appropriate to implement or modify this Plan, or to enforce the provisions of the Code.

    **14.3**   Should the Debtor default on any obligation to make payments under this Plan, the Debtors shall notify the Court and the Office of the United States Trustee of such default or failure to comply with the terms of the Plan by filing a written statement with the Court.

INPRINT MANAGEMENT, INC.
d/b/a Proforma InMotion,

By Its President

/s/ Kevin Montecalvo
_____
Kevin Montecalvo, President

BY COUNSEL:

/s/ George J. Nader
_____
George J. Nader
BBO #549149
Riley & Dever, P.C.
210 Broadway, Suite 101
Lynnfield, MA 01940
(781) 581-9880
nader@rileydever.com